# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OGHENETCHOUWE ADEGOR EDERAINE JR., a/k/a Ochenetchouwe Adegor, a/k/a David Tecum, a/k/a Gary Dube, a/k/a Joel Akibo, a/k/a James Oliver, a/k/a Isreal Patrick, and a/k/a Michael Baker<br><br>    Defendant | No. 18-cr-10287-WGY<br><br>**FILED UNDER SEAL** |

## EMERGENCY MOTION TO STAY RELEASE ORDER

The United States requests a stay of the August 22, 2018 order of a Magistrate Judge presiding in the Central District of California-Western Division ("the C.D. Cal Magistrate Judge") releasing defendant Oghenetchouwe Adegor Ederaine Jr. on bail. The United States further seeks a revocation of that release order after this Court conducts a *de novo* review of the detention hearing. The stay is appropriate because there is a strong likelihood that the flight risk indicators in this case will lead this Court to revoke Ederaine's release and order him detained pending trial. At a hearing, the United States will prove by a preponderance of the evidence that Ederaine is a flight risk and that no conditions can reasonably assure his appearance at trial. Accordingly, the release order should be revoked and Ederaine should be ordered detained pending trial.

The Government seeks this motion on an emergency basis, as the C.D. Cal Magistrate Judge denied the government's request for a stay pending review. The government expects that a bond will be posted and that Ederaine will be released today, August 23, 2018.

I.  <u>A Stay Is Warranted Because There Is a Substantial Likelihood This Court Will Order Detention.</u>

    A.  <u>The Magistrate Court's Release Order</u>

On August 21, 2018, a grand jury sitting in the District of Massachusetts returned a one-count indictment charging Ederaine with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h).  Dkt. No. 1 (attached hereto as Exhibit 1).  Agents arrested Ederaine in the Central District of California on August 22, 2018, and he made his initial appearance before the C.D. Cal Magistrate Judge on that date.  The detention hearing was held the same day.[1]  The parties proceeded by proffer, which the government understands is the standard practice in the Central District of California.  The C.D. Cal Magistrate Judge ordered the Ederaine released on $25,000 (secured/unsecured?) appearance bond, along with other basic conditions, including no travel outside California or Massachusetts, no possession of identification documents of others, and surrender of his passport by August 27, 2018.  The court denied the government's request for a stay pending review in the District of Massachusetts of the release order.  The government is ordering the recording and/or a transcript of the hearing.  Because the recording and/or transcript are not yet available, and given the urgency of the motion, the government is relying on information provided by the Assistant U.S. Attorney who handling the proceeding before the C.D. Cal Magistrate Judge.

    B.  <u>A Stay is Appropriate When the District Court Is Reviewing a Release Order.</u>

"If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of

---

[1] The defendant is contesting identity, and a hearing on the issue is scheduled for August 29, 2018.

2

the order or amendment of the conditions of release. . . . The motion shall be determined promptly." 18 U.S.C. § 3145(a). As Ederaine is charged in the District of Massachusetts, this Court has original jurisdiction over the offense and is the proper forum to hear the Government's forthcoming Motion for Revocation of Order of Release.

The district court reviews a release order de novo. *See United States v. Tortora*, 922 F.2d 880, 884 n.4 (1st Cir. 1990) (with respect to pretrial detention or release orders, "the proper approach is for the district court to engage in de novo review of the contested order.")

The preponderance standard governs the flight risk determination. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991). That is, a detention order should issue if "the judicial officer should determine that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985) (distinguishing this standard governing the flight risk determination with the higher "clear and convincing" burden of proof that governs detention based on danger to the community).

This Court has the authority to issue a stay pending its *de novo* review of a release order. *United States v. Godines-Lupian*, 816 F. Supp. 2d 126, 127–28 (D.P.R. 2011) (noting that the First Circuit has not squarely addressed the issue, but noting that other circuits, "including the Ninth Circuit in which the Central District of California lies," have so found) (collecting cases); *see also United States v. Brigham*, 569 F.3d 220, 229-30 (5th Cir. 2009) (explaining that "given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory.") (citing numerous cases in which courts stayed pretrial release orders pending district

court review). *Brigham* also observed that because the review of a release order shall be determined "promptly," defendants are "protected from prolonged interim detention if a release order is later upheld." *Id*.

*Brigham* further explains why the other traditional factors relevant to a stay analysis, such as irreparable harm to the moving party and whether a stay will substantially injure the other party, will typically favor the issuance of a stay when review of a release order is being sought. *See id.* at 230 ("[I]f the district court disagrees with the magistrate judge's determination regarding release versus detention, but no stay is in place, the person in question may have . . . disappeared by the time the district court's ruling is rendered and detention is ordered.").

II. This Court Should Revoke The Release Order Because Ederaine Is A Serious Flight Risk And No Conditions Can Reasonably Assure His Appearance At Trial

The charges against Ederaine stem from his involvement in a complex, long-running fraud and money laundering scheme involving co-conspirators located throughout the country and overseas, including Nigeria. Ederaine opened at least 23 bank accounts using stolen and/or counterfeit identification documents. These accounts received hundreds of thousands of dollars in funds obtained through fraud. Moreover, there were attempted (ultimately unsuccessful) transactions that far exceeded the value of the successful ones. In just one instance of a successful tramsaction, in January 2018, a Dorchester law firm was the victim of an email intrusion that resulted in the transfer of more than half a million dollars in a real estate closing funds, about $60,000 of which was transferred to Ederaine's bank account (opened using a false name and a counterfeit Kenyan passport).

Among the information establishing risk of flight is the following:[2]

- Use of aliases and counterfeit identification documents:  The indictment alleges that Ederaine used six false identities to open approximately 23 bank account in greater Los Angeles to engage in transactions with proceeds of various fraud schemes.  A search warrant executed at his residence on August 22, 2018, uncovered additional false/counterfeit identification documents, including multiple counterfeit passports, driver's licenses, and credit cards in the names of those aliases (and other previously unknown aliases).  Some of the documents were hidden in his car.

- Nigerian citizenship:  Ederaine is a Nigerian citizen believed to have status as a lawful permanent resident in the United States.

- Access to cash:  The fraud scheme was his principal source of income.  Ederaine does have a legitimate job, but as documented in his social media accounts and through law enforcement surveillance, Ederaine's lifestyle far exceeds what he can afford from his limited legitimate income.  He likely unable to afford his current apartment without income from fraud.

- Access to additional counterfeit identification documents:   U.S. Customs and Border Patrol has twice seized parcels intended for Ederaine containing counterfeit identification documents.  Specifically, in August 2016, a package with a Liberian passport, Liberian

---

[2] Due to the time difference in California, the fact that the tape of the hearing has not yet been obtained, and the recently developed facts (including statements made and evidence gathered yesterday), the government has not been able to either validate all of the information or determine precisely what was conveyed to the magistrate court at the hearing yesterday.  The government will continue to gather information and will update the Court.  The government is seeking a stay at this time however, as the AUSA in California anticipated release today.

- identification card, and Ghanian identification card were seized (all counterfeit). In March 2017, a package from Nigeria was seized containing two counterfeit UK passports.

- <u>Weight of the evidence</u>: The current charges are well supported by surveillance photographs and business records supporting fraudulent withdrawals and the underlying fraud scheme. In addition, there is significant evidence supporting uncharged crimes under investigation, including aggravated identity theft, which carries a two-year mandatory minimum sentence to be served consecutive to any term of incarceration imposed on the current charges. Thus, the defendant faces a potentially significant period of incarceration not only for the currently charged offense, but also for potential superseding charges.

- <u>False statements to law enforcement</u>: On August 22, 2018, Ederaine told law enforcement that he did not possess keys to his own apartment, later admitting that he lied and did possess keys to his apartment. He also stated that he did not have a car, then stated that he had a car, but that it was with a mechanic. Agents had previously observed Ederaine driving a Mercedes registered in his name; the car was in fact parked on the street outside his apartment. Ederaine was also charged in 2010 with offenses relating to providing false identification documents to a law enforcement officer. The charges appear to have been dismissed.

In short, Ederaine has access to significant amounts of cash, false identification documents (including counterfeit passports), no ties to the district of Massachusetts, substantial ties to Nigeria, and is involved in a long-running fraud scheme involving international movement

of fraudulently obtained funds and the use of false identities and counterfeit identification documents to perpetuate the scheme.

III.    Conclusion

Ederaine is a flight risk and there are no conditions that can reasonably assure his appearance at trial.  For these reasons, the United States requests an immediate stay of the Magistrate Judge's release order.  If Ederaine has been released, the United States requests that this Court issue a bench warrant for his arrest and that the Court order Ederaine detained pending a *de novo* review of the detention hearing.

>                               Respectfully submitted,
>
>                               ANDREW E. LELLING
>                               United States Attorney
>
> By:   */s/ David J. D'Addio*
>         David J. D'Addio
>         Amy Harman Burkart
>         Assistant U.S. Attorneys
>
>         Date:  August 21, 2018